UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAUREN DODDS, individually and
on behalf of all others similarly situated,

        Plaintiff,

vs.

NATIONWIDE INSURANCE
COMPANY OF AMERICA,

        Defendant.
_____/

CASE NO.: 6:19-cv-00570-CEM-DCI

## SECOND AMENDED CLASS ACTION COMPLAINT

The Plaintiff, Lauren Dodds, individually and on behalf of all others similarly situated, files this Second Amended Class Action Complaint against Nationwide Insurance Company of America ("Nationwide" or "Defendant"), and in support states as follows:

### NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff Lauren Dodds, who is a named insured under the Nationwide automobile policy issued for private passenger auto physical damage, including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV."

2. Defendant Nationwide is one of the largest private passenger auto insurance carriers operating in Florida. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just

Plaintiff but thousands of other putative Class Members amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3. This lawsuit is brought by the Plaintiff individually and on behalf and all other similarly situated insureds who suffered damages due to Defendant's practice of refusing to pay full ACV payment or full total-loss payment ("FTLP") – including, at minimum, title transfer fees and tag transfer fees – to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages.

4. The failure to pay FTLP to first-party total losses owed to the Nationwide insureds is a breach of the policy agreement and a clear breach of contract under Florida law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all of Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which the matter in controversy exceeds the sum of $1,000,000.00, exclusive of interest and costs. Plaintiff is a Florida citizen and Defendant is citizens of a state different from Plaintiff. There are more than 100 members of the Florida Class sought to be certified. Defendant writes hundreds of millions of dollars worth of premiums in the State of Florida. Tens of thousands of insureds have made total-loss claims during the relevant time period, all of whom have a claim worth a minimum of $79.75. Thus, the amount-in-controversy likely exceeds $1,000,000 dollars.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

7. At all times material hereto, Plaintiff Lauren Dodds is and was a citizen of the State of Florida and domiciled in Orange County.

8. At all times material hereto, Defendant is and was a corporation located in the State of Ohio and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Orange County, Florida. Defendant's principal place of business and headquarters are both located in the State of Ohio.

## FACTUAL ALLEGATIONS

9. In its standardized policy, Defendant promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the actual cash value or ACV of the insured vehicle to the insured.

10. Defendant Nationwide's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every Nationwide auto policy issued by Defendant in Florida during the relevant time period.

11. ACV includes an obligation to pay state and local regulatory fees and taxes for total loss vehicle comprehensive and collision coverage (full total-loss payment or FTLP). Such fees include title transfer fees and tag transfer fees, both of which are mandatory fees imposed by the State of Florida.

12. Defendant promises to provide in FTLP an amount that includes amounts for (at minimum) sales tax, title transfer fees and tag transfer fees.

13. At all times material hereto, Plaintiff Lauren Dodds owned a 2007 Volkswagen Rabbit Automatic with VIN # WVWBR71K97W224737.

14. At all times material hereto, Plaintiff insured the vehicle under an insurance policy issued by Defendant.

15. On or about July 14, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 398051-GD-3.

16. Following the filing of said claim, Defendant determined that the Insured Vehicle was a total loss with a base value of $6,084.00, an adjuster vehicle value of $6,544.00, a Value before Deductible of $7,361.64 and a Total of $6,861.64.

17. The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage. Exh. A (Valuation Report).

18. No amount for sales tax or title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. Id. at 1. Rather, the Report asserted that the Total value of $6,861.64 may not reflect the settlement amount because things such as "license and fees" were not taken into account in determining the value, and may need to be taken into account prior to final determination of the settlement amount. Id.

19. Defendant then provided the "Total" value amount as determined by CCC of $6,861.64 as the ACV payment provided to Ms. Dodds. Exh. B (Total Loss Settlement Explanation or "TLSE").

20. Defendant's payment of $6,861.64 did not include amounts for title transfer or tag transfer and was thus not an FTLP in breach of its contract with Plaintiff, which promised to provide FTLP, including (at minimum) title transfer fee and tag transfer fee amounts.

21. Defendant, pursuant to a standard and uniform business practice, never pays insureds transfer fee amounts after a total-loss to an insured vehicle and never pays FTLP, notwithstanding its contractual obligation to do so.

24. Defendant's failure to pay tag and title transfer fee amounts constitutes a breach of the policy.

25. Sales tax, title transfer fees and tag transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

26. Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.

27. Florida law requires that all vehicles have proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer license plate or tag is no less than $4.50.

28. Plaintiff was owed FTLP, which includes title transfer fees and tag transfer fees, and state and local sales tax calculated as a percentage of the base vehicle value.

29. In breach of its contract with Plaintiffs, Defendant did not include transfer fees in making the ACV payment for Plaintiff's total loss and thus did not make the FTLP required by its insurance policies and agreement.

30. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE NATIONWIDE INSURANCE POLICY

31. Defendant's insurance policy, under the section entitled "Part D, Coverage for Damage to Your Auto", states that "Collision" and "Other Than Collision" (more normally known as "Comprehensive") coverage means Defendant will pay for loss to a covered auto resulting from collision of the insured vehicle with another object and for any loss not covered by collision and not excluded from the policy.

32. The "insured auto" or "covered auto" is defined, *inter alia*, as the auto listed in the declarations page.

33. In the "Part D" section, under a provision entitled "Limits of Liability", Defendant states, in relevant part, that the "limit of liability" for loss is the ACV of the damaged property.

34. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and an "other than collision" total-loss claim.

35. ACV is not specifically defined in the policy.

36. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or state and/or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all in order to receive payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state and regulatory sales tax and/or fees; or (5) any provision linking the amount of ACV state and regulatory sales tax and/or fees to a particular

replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

37. According to Defendant's policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendant promises to pay a predictable amount – the actual cash value of the insured vehicle, including sales tax and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

38. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased, insured autos are considered "owned" for purposes of the policy. There are no differences in coverage, premiums, or policy language between leased, owned, and/or financed vehicles.

**PAYMENT OF SALES TAX AND MANDATORY FEES**

39. Controlling case law from the Florida Supreme Court, Florida's intermediate appellate courts, the 11th Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an insurance policy, should be defined as the repair or replacement cost minus depreciation – a definition which would include sales tax and transfer fees necessarily incurred upon replacement of the insured vehicle. See e.g., Trinidad v. Florida Peninsula Insurance Co., 121 So. 3d 433, 438 (Fla. 2013) ("[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear,

obsolescence, or age.'") (quoting Blacks Law Dictionary 506, 1690) (9th Ed. 2009); Goff v. State Farm Florida Insurance Co., 999 So. 2d 684, 689 (Fla. 2d DCA 2008)(undefined ACV is calculated as full replacement cost minus depreciation); Mills v Foremost Insurance Co., 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that sales tax "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (quoting Ghoman v. New Hampshire Insurance Co., 159 F. Supp.2d 928, 934 (N.D. Tex. 2001)); Roth v. Geico General Insurance Co., (Exh. C at 9) ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (note omitted); Bastian v. United Services Automobile Ass'n, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the 11th Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus part of the ACV).

40. In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. Id. But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insurer and strictly against the insured who prepared the policy." See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest

possible manner" in order to effect "the greatest extent of coverage." See e.g., Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So.2d 565 (Fla. 2nd DCA 1984) (coverage must be construed broadly and exclusions narrowly).

41. Sales tax, title transfer fees, and tag transfer fees are examples of elements constituting the FTLP owed to insureds in the event of a total-loss.

42. By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.

43. Nevertheless, Defendant declines to include all such fees, taxes and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

44. Plaintiffs bring this action seeking representation of a class pursuant to Florida Rule of Civil Procedure 1.220(a) and (b)(2)-(3).

45. Plaintiff's claims are typical to those of all class member because members of the class are similarly affected by Defendant's failure to pay ACV state and local sales tax and regulatory fees upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policy.

46. Plaintiff's interests are coincident with and not antagonistic to those of other class members.

47. Plaintiff's claim raises questions of law and fact common to all members of the class, within the meaning of Rule 1.220(a)(2) and they predominate over any questions affecting only individual Class Members within the meaning of Rule 1.220(b)(3). The common questions

include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiffs and the class members are owed ACV sales tax and tag/title transfer fees upon the total loss of an insured vehicle; and (b) whether the Defendant has breached its insurance contracts with Plaintiffs and the class members by failing to pay ACV sales tax and tag/title transfer fees upon the total loss of an insured vehicle.

48. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the improper failure by Defendant to pay state and local regulatory fees – specifically tag and title transfer fees – upon the total loss of insured vehicles. Plaintiff's claim is based on the same policy language and promises as all other class members' claim.

49. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class.

50. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

51. Class treatment is necessary, pursuant to Rule 1.220(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.

52. Pursuant to Rule 1.220(B)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it

is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

53. Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the Middle District of Florida very recently treated as a class action a case that is substantially identical in fact and in law to the present action. *See Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). *Bastian* is in the process of being successfully settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, *Roth v. Geico General Insurance Co.*, Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) is a substantially similar case recently certified as a class action with judgment entered in favor of the class.

54. Plaintiffs bring this action as class representatives, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

**MONETARY RELIEF CLASS**

All insureds, under any Florida policy issued by Nationwide Insurance Company of America with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five-year time period prior to the date on which this lawsuit was filed until the date of any certification order.

11

## INJUNCTIVE RELIEF CLASS

All persons insured by Nationwide American Insurance Company and its subsidiaries for private-passenger auto physical damage coverage for comprehensive or collision coverage.

55. The issues related to Plaintiff's claim do not vary from the issues relating to the claims of the other members of the class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

56. Certification of the above class is also supported by the following considerations:

   a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

   b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

57. Although the precise number of class members for the Monetary Relief Class and the Injunctive Relief Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurer in the State of Florida and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The

unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiffs and the class members. Thus, numerosity as to both classes is established.

58. Rule 1.220(A)(2)'s commonality requirement for the Monetary Relief Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include (but are not limited to): (1) whether policy language ACV includes payment of mandatory transfer fees, and (2) whether Defendant is required to pay transfer fee amounts to insureds who suffer total-losses to vehicles insured under Defendant's Policies.

59. Rule 1.220(B)(3)'s typicality requirement for the Monetary Relief Class is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff's and Class Members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Monetary Relief Class Members. Plaintiffs suffered the same harm as all the other Monetary Relief Class Members: the coverage for full ACV payment including the full measure of transfer fees.

60. The relevant Policy provisions for each Monetary Relief Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions

for each Monetary Relief Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Monetary Relief Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

61. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Monetary Relief Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

62. Rule 1.220(B)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Monetary Relief Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

63. The Injunctive Relief Class meets the requirements for class treatment under Rule 1.220(A) and 1.220(B)(2).

64. Numerosity is established because although Plaintiffs do not know the precise number of individuals insured under a private-passenger auto physical damage policy issued by Defendant and such number can only be established through discovery, the fact that Defendant is

a large insurer writing hundreds of millions of dollars in premiums for such insurance policies indicates that numerosity is easily established as to the Injunctive Relief Class.

65. As to the Injunctive Relief Class, common questions of law and fact exist and predominate over any question affecting only individual Injunctive Relief Class Members. Because the central issues in this case turn on the interpretation of identical policy provisions, this case is especially well-suited to class adjudication. Further, Defendant and all members of the Injunctive Relief Class are bound by the same material terms, and the central issues in the case all involve interpretation of the same material and controlling terms.

66. Plaintiff's claims and defenses are typical of the claims of the Injunctive Relief Class under Rule 1.220(A)(3). Plaintiffs and Injunctive Relief Class Members have insurance Policies with identical material terms. Plaintiff's injunctive relief claims are based upon the same legal theories as those of the Injunctive Relief Class Members.

67. Plaintiff's claims also are maintainable on behalf of the Injunctive Relief Class pursuant to Rule 1.220(B)(2) because Defendants have acted, and refused to act, on grounds that apply generally to all the Injunctive Relief Class Members, thereby making final injunctive relief appropriate with respect to the Injunctive Relief Class as a whole. Defendant has created and implemented a uniform claims handling practice based on policy language that is applicable to all Injunctive Relief Class Members. Defendant's practice of failing to pay full ACV, including sales tax and transfer fees and conditioning payment (if any) on actual replacement, for first-party total loss claims applies generally to all Injunctive Relief Class Members and is ongoing.

68. Defendant's breach of Policy provisions requiring them to pay full ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to Plaintiffs and the Injunctive Relief Class in the future.

**CLAIM FOR BREACH OF CONTRACT**

69. The allegations contained herein are incorporated by reference.

70. This count is brought by Plaintiff Lauren Dodds on behalf of herself individually and on behalf of all putative Class Members.

71. Plaintiff was party to an insurance contract with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

72. The interpretation of Plaintiff's and all Class Members' insurance Policies is governed by Florida law.

73. Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

74. Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies necessary to be paid on her or her total loss.

75. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

76. Defendant refused to make a FTLP and thus failed to pay the vehicle's ACV to Plaintiff and every Class Member.

77. Defendant's failure to provide the promised coverage constitutes a material breach of contract with the Plaintiff and every Class Member.

78. As a result of said breaches, Plaintiff and the class members are entitled under Defendant's insurance policies to sums representing the benefits owed for full ACV payment, including sales tax and transfer fees, as well as costs, prejudgment and post-judgment interest, injunctive relief and other relief as is appropriate, including attorney's fees pursuant to Fla. Stat. § 627.428.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff Lauren Dodds, individually and on behalf of the Class, demand a trial by jury on all triable issues and seek relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Classes described above;

- For an award of compensatory damages for the Monetary Relief Class in amounts owed under the Policies;

- For injunctive relief for the Injunctive Relief Class to prevent continuation of the illegal practice, for other injunctive relief as is proven appropriate in this matter;

- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated April 12, 2019.

Respectfully submitted,

*/s/ Jake Phillips*
Jacob L. Phillips
FBN: 120130
*/s/ Ed Normand*
Edmund A. Normand
FBN: 865590
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@ednormand.com
service@ednormand.cm


*/s/ Christopher J. Lynch*
Christopher J. Lynch
FBN: 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, FL 33143
Tel: 312.967.3653
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com

**Counsel for Plaintiffs**